The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning and welcome to the Ninth Circuit. I'm Judge Nelson, and it's a pleasure to be joined by my colleagues, Judge Lee and Judge Rakoff. We're very grateful for Judge Rakoff for his help in coming out here to help us handle our cases. Well, it's my privilege to have been invited out here to, and it's also nice to be in beautiful, free-thinking parlor, so. Well we also want to welcome counsel. I think we have all counsel present today for today's arguments, which is a treat, and we're grateful for you making the efforts to be here. We ask that during the argument you please watch your time, keep to your allocated time frames, and just wrap up as your time is concluding. Let us know if you want to reserve any time for rebuttal. We're ready to proceed with our oral argument calendar. We're submitting three cases, United States v. Drake, Drummer v. Kijikazi, and Ticket Shops v. Costco. The first case set for argument is Borden v. E-Financial, and we will first hear from Mr. Heller. Good morning, Your Honors. May it please the Court, Sean Heller on behalf of Appellant Plaintiff David Borden, along with my co-counsel Joshua Glickman. I would like to reserve, with the Court's permission, three minutes for rebuttal. Thank you. This is an appeal of an errant dismissal of Mr. Borden's case in the District Court, based on a finding that an automatic telephone dialing system must generate random or sequential telephone numbers, despite no such requirement in the statute, no such holding in do-good, and a finding by do-good that in ATDS the statute is not malleable, and there's no justification for eschewing the best reading of the statute, and the Court must interpret what Congress wrote, which is— This issue recently come up in a, admittedly, non-precedential opinion by the Ninth Circuit in Meyer v. Allied Interstate, decided on January 19th of this year, in which a panel of this Court held—really rejected your position on the ground that it would render, essentially, any system that stores a pre-produced list of telephone numbers and then auto-dials them in ATDS, so, of course, you're not bound, and we're not bound by that summary disposition, but what about that? Thank you, Your Honor, and I'm glad that you brought up the Meyer decision. Your Honor— How could I have missed it since I was on the panel? We noticed, Your Honor, thank you. And it's our understanding, based on that decision, that Meyer was affirmed—the District Court's opinion was affirmed because there was no evidence that the use of a random or In that case, LiveVox, the dialer system, simply called the list of phone numbers in the order in which it was uploaded. The Court makes note of that on several occasions, and that is a distinguishing characteristic of the facts in Meyer and our facts here. Here, there was a predetermined sequential order that was developed by eFinancial based on the number of days from lead generation in which they would sequentially send text messages to each of the potential customers who visited the website in an attempt to obtain a life insurance quote but did not provide their prior express written consent to receive such text messages. And as a result, those texts were sent in intermittent intervening days, not just straight down the list as it was done in Meyer. And we think that this is a critical distinction because that is how a number generator works. That's how a number generator works, whether it's in the context of what's colloquially known as generating numbers or phone numbers, and that's how it works if it's picking the order in which numbers are to be called, which was how it was referenced in footnote 7. For example, a random number generator could be set from 0 to 10, or 0 to 9, rather, and it could, a system could, produce every single, or create, rather, a list of every single phone number that exists between 0 and 9, and then shuffle that order and come up with numbers. That's a way a number generator could do it. It could also work like a traditional state lottery, which is by pulling up individual balls, so to speak, if we can picture it, as opposed to this more raffle-type style, which was employed here, and is also another way that telephone numbers can be generated. So it's... Although it wasn't the ground that the district court went off on, didn't your client consent to all this? Thank you for asking that question, Your Honor. Our view is that our client did not consent. Our client actually had no recollection or understanding as to why he was receiving these text messages. Apparently, one night, he was looking for life insurance quotes, went through a variety of websites, and attempted to see what quotes were available, and potentially purchased life insurance. Apparently, when he submitted his demographic information on the eFinancial website, vis-a-vis Progressive, there was some fine print at the bottom that was in tiny, difficult-to-read gray font, and there was no way to deselect it. By hitting submit to get a quote, the consent was essentially ascended to without Mr. Borden's knowledge. So you don't disagree that he consented in the sense that he put his information in and that disclaimer was there. You're saying the disclaimer is not enforceable, and therefore, there was no consent. That is correct, Your Honor. And so, Your Honors... If you can... Sorry to interrupt. If you can just go back to the statutory text. I mean, your reading of it isn't implausible, but it seems like the more natural reading of random or sequential number refers to the telephone number, because the word number is mentioned three times in that provision. It first clearly says telephone number, then it says random or sequential number, and then finally says such number, which clearly refers to telephone number. So it seems very odd to switch back from telephone number to just a random number, setting the order it's called, then back to telephone number. So if you can explicate on that, on your view of the statutory text. Thank you, Your Honor. As pointed out by the court in Duguid, we are constrained by the statutory text, which doesn't include the word number. And that is e-Financial's position, as Your Honor has pointed out, that it could potentially be read into the statute, but Duguid cautions against reading in such words into the language of the statute. And in this case, it's simply not necessary. In footnote 7, when the court is describing the function of using a random or sequential number generator, it talks about picking the order in which the numbers would be called. That's not something that would occur, that is something that can occur, depending on how you're using a number generator to either generate phone numbers or pick the order, but it doesn't necessarily occur through telephone number generation only. So the number generator is used, and it's used in this case, it has to either store or produce telephone numbers. Those are the verbs that the court identified that's what it must do, and how it must do it is using a random or sequential number generator, not telephone number generator. And, Your Honors, I believe I might be into my, am I still within my seven minutes, Madam Clerk? Well, you wanted to reserve. Three. Yeah, so you're within that time, so do you want to reserve the rest? Your Honors, I would like to reserve the rest, thank you. All right. Good morning, Your Honors. Jim Snell from Perkins Coie for eFinancial, LLC. I'm joined by my colleague, Anna Thompson here, who's also at Perkins Coie. I want to just touch briefly on the law and the facts here. I'll touch first on the law, and I think Your Honors are getting it exactly right. The do-good question presented was whether an auto dialer must have the capacity to generate random or sequential phone numbers. That's the issue the court was resolving. Based on the statutory text, as Justice Lee pointed out, you have to read telephone number into 227A1 in the definition of an ATDS. And do-good abrogated the decisions that held that just storing numbers for automatic dialing later is an auto dialer. It did not abrogate the cases, Glasser, Dominguez, and Gedelhek, that held that a number generator actually has to generate random or sequential telephone numbers. It's clear from the legislative history that do-good goes in great deal on that we're talking about telephone numbers. They're focused on random dialing of telephone numbers that might tie up emergency systems. They're focused on sequential dialing of telephone numbers that might tie up business lines. They're not focused on some generation of a non-telephone number. That never comes up. There's no support that Borden can find in the legislative history or in FCC orders for that position. Judge Rakoff, we agree with the decision in Meyer. We view that as lockstep. In this case, Borden is alleging that when he filled out a lead form and he did voluntarily provide his phone number on the lead form, there's no dispute that it was voluntarily provided, that when he provided that phone number, the system then, based on the date the lead form was sent, categorized the text as when they would go out. That's the same as what happened in Meyer, where sequential numbers were alleged to be uploaded and then called in sequential order. You submit a lead form, you get a text based on the date you submitted the lead form. Can you address footnote seven of a do-good? I mean, I think that's probably your opposing counsel's best argument, so kind of a curious footnote there. Yeah, that's a great question, Judge Lee, and what I would do is focus on Pace's amicus brief. I think it's worth a read. If you read that brief, what the brief talks about is a patent that made technology, made equipment able to dial random or sequential numbers. The same equipment could do both, and it would be interchanged based on the way you wanted to space out the calls. Those numbers could be generated, produced, either to be called immediately, they didn't need to be stored, or they could be later stored. And so what the Pace brief is talking about is equipment that has ability to randomly and sequentially dial numbers. When it's talking about produce, it's creating those numbers, those telephone numbers. When it's talking about storing, it's talking about storing them. And I would recommend that your honors read that Pace brief, the do-good cites, and it's in the excerpts of record. That seems to be consistent with how many district courts have interpreted footnote seven. Are there any court of appeals decisions that have interpreted footnote seven? Yes, your honor. Beal and Panzarella are both cases that would create a circuit split because they both held that for a defendant to be liable, that defendant has to actually use equipment to generate random or sequential telephone numbers. And in particular, the Beal case dealt with software called the TextLive software. And what the TextLive software was alleged to do is shuffle contacts so that the phone numbers that were stored could be randomly called. And the court in that case, with a cite to footnote seven, held that Facebook was not concerned with how a system may organize and select phone numbers, which is what Borden is alleging here, is the way the phone numbers are organized and selected is what's wrong. And Beal also held that where the plaintiff provided his number, that all of the reasons that Congress passed the law basically reach a vanishing point. If the plaintiff provided their number to the defendant, then you don't have an issue of having emergency lines tied up. You don't have the issue of unlisted numbers being called. You don't have the issue of sequential phones being made to businesses. So we would ask your honors not to have a circuit split to follow both Beal and Panzarella. Your honors, I also just want to touch briefly on the facts. The facts here are better than the facts were in Duguid. As Judge Nelson, as you noticed, this is a case where Borden says he filled out a form, voluntarily provided his phone number. This is not an unsolicited call case. It's not, you know, get a vacation, IRS penalty. He provided his number in request for an insurance quote, and he got text relating to that request. It would not be good to follow Borden's logic because it would reopen the law before Duguid. It would have every plaintiff claiming that there's something going on in the software that creates numbers, that those numbers somehow have something to do with auto dialers, and it would make, it would open the floodgates again, create expensive litigation, and it wouldn't be good for businesses, and it wouldn't be good for consumers who ultimately are paying for these lawsuits that are being brought. If this lawsuit is allowed to continue, it would be allowed to continue in the face of Duguid, the statute itself, the legislative history, and what's going on in both the Third and the Eighth Circuit and the Meyer decision that was issued earlier this year in this court. And I think, correct me if I'm wrong, uniform or almost uniform district courts have rejected your adversary's interpretation of footnote seven. That's correct, Judge Rakoff. We've counted 20 to date, I believe. There's only a handful that don't follow our argument, and those just delay the issue for discovery. There's none that have actually found the other way, to my knowledge. With that, unless your honors have further questions, I'll rest. Okay. Thank you. Thank you. And I think you have a little over two minutes for rebuttal. Thank you, your honors. Your honors, I'm glad that my friend, Mr. Snell, brought up the Pace brief in the Supreme Court decision, Duguid. In that very Pace brief, where Pace describes the infamous patent referenced in footnote seven, it defines the word produce to mean retrieve, select, or obtain from memory. It does not define produce as the Beal decision does, as to necessarily mean generate. Do you agree that if we adopted your view of the law, though, that we'd be creating a circuit split with Beal? Your honor, I believe that it may be interpreted that way. I think there would be some arguments to that extent, without doubt. I do believe, however, that the Floodgates argument that Mr. Snell has raised is simply not the case here. Here, we know for a fact that there was this sequential order that was developed by eFinancial for its marketing plans. We know that that sequential order was employed. We know that the texts were sent via a short code, which cannot be done from a cell phone. The texts were generic. They were inducements, advertisements. They were not... You noted that this wasn't from a cell phone. Is that a distinction that matters for the statutory text? Because I think that's one of the concerns, is that how do you distinct... If we adopt your view, how is that any different from anybody who's just calling on a cell phone at all? Thank you for raising that, your honor. Cell phones do not use a random or sequential telephone number generator... Producers store telephone numbers. It's a user who selects the order in which group texts are, for example, ordered. When somebody's driving and their phone sends an automatic text message back, sorry, I'm driving, that's a trigger. That's just like the fax and do good. And that's not covered under the purview of the statute. There has to be an employment of the use of a random or sequential number generator in order to fall under the confines of the statute and what an automatic telephone dialing system is. Okay. Thank you. Thank you to both counsel for your arguments in the case. The case is now submitted. Thank you, your honors.
judges: NELSON, LEE, Rakoff